# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
# AT NASHVILLE
## Assigned on briefs November 14, 2013

## STATE OF TENNESSEE v. JAMES LOUIS RHODES, II

### Appeal from the Circuit Court for Lawrence County
### No. 29360    Robert Lee Holloway, Jr., Judge

---

### No. M2013-00622-CCA-R3-CD-Filed March 13, 2014

---

The defendant was convicted of assault and child neglect, both Class A misdemeanors. He was sentenced to two consecutive sentences of eleven months and twenty-nine days. On appeal, the defendant argues that his sentences are excessive and that the trial court erred by denying his request for judicial diversion. After carefully reviewing the record de novo to determine if the trial court's sentencing decisions can be upheld, we conclude that no reversible error was committed. The judgments of the trial court are affirmed.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which THOMAS T. WOODALL, J., joined. CAMILLE R. MCMULLEN, J., filed a dissenting opinion.

William J. Eledge, Lawrenceburg, Tennessee, for the appellant, James Louis Rhodes, II.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophie S. Lee, Senior Counsel; Mike Bottoms, District Attorney General; and Christi Thompson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS AND PROCEDURAL HISTORY

On November 19, 2010, a grand jury indicted the defendant on two counts of aggravated child abuse in violation of Tennessee Code Annotated section 39-15-402, Class B felonies, and two counts of child neglect in violation of Tennessee Code Annotated section 39-15-401, Class A misdemeanors. The charges stemmed from the defendant's alleged treatment of his two minor daughters, then ages nine and eleven. After trial by jury, the defendant was found not guilty of two charges pertaining to his eldest daughter but guilty of

simple assault and child neglect with respect to his nine-year-old daughter, the victim.

Although the defendant asked the trial court to consider the testimony at trial when sentencing, he has chosen not to include the trial transcripts in the record on appeal. According to the defendant's pre-sentence report, on September 20, 2010, a police officer responded to a call concerning alleged child abuse at the defendant's residence. According to the responding officer, after he arrived he was informed that the defendant's two daughters had missed their school bus home that day, and that they had received a ride from another girl. The defendant responded by imprisoning his daughters in an upstairs room of his residence. "The room was infested with spiders, fleas, had no air conditioning [or fan] and no bathroom." Despite their pleas, the defendant refused to allow the girls out to use the bathroom, and the girls were forced to relieve themselves inside the locked room. The windows of the room were "airtight" and had been "screwed shut" so they could not be opened. The only contents in the room were a mattress and a baby monitor.

One investigating officer observed excessive bruising on the backs of one of the girl's legs. When the officer asked the defendant about the bruising, the defendant "advised that he used two wood sticks to whoop the girls when they got in trouble." One of the daughters, the victim, reported that her father had whipped her forty-five times with the "Board Of Education" before he had locked her in the room. The elder daughter reported that the defendant regularly locked her younger sister, the victim, in the upstairs room for long periods of time without letting her out. The elder daughter reported that when this occurred she could hear the victim screaming and crying. Both girls also reported that they were required to wear the same clothes to school every day and were not allowed to shower on a regular basis. The reporting officer stated that he witnessed a large bruise on the victim's left thigh and noticed that her legs were "covered" with what appeared to be insect bites. The victim appeared dirty and "had an odor about her." The victim also "smelled of bleach and had minor burns on her fingernails." The victim later reported that her father kept her locked in the room and only let her out of the room to eat and clean. The girls cleaned the house with bleach until their hands were raw.

The pre-sentence report also mentioned that both of the children had undergone psychological examinations, but "[d]ue to the sensitive nature of the report[s], details have been omitted from this pre-sentence report." However, a victim impact statement prepared by the Department of Children's Services (DCS) team leader on the victim's behalf reveals that the victim was hospitalized for ten weeks "due to her past trauma." According to the victim impact statement, this "was a level 4 hospital setting" which was "[t]he department's highest level of care for children due to their needs." The victim's therapist, with whom the victim sometimes met as much as twice a week, also reported that the victim was a "very traumatized child." As of the time of the filing of the victim impact statement, the victim

was still in weekly counseling sessions and monthly sessions with LifeCare. In the opinion of DCS, "the abuse [the victim] suffered from her father will require her to have extra counseling and services for years."

At the defendant's sentencing hearing on November 29, 2012, the defendant's pre-sentence report was entered into evidence. The defendant presented no evidence but asked the trial court to consider his testimony at trial and grant his application for judicial diversion. Defense counsel noted that the defendant was fifty-two years old and had no criminal record.

The trial court sentenced the defendant to eleven months and twenty-nine days on each count and ordered the defendant to serve the two sentences consecutively. Although the trial court recognized that the statutory enhancing and mitigating sentencing factors did not expressly apply to non-felony sentencing, the trial court found that the defendant's lack of a criminal record was a mitigating factor. The trial court also found two enhancing factors: (1) that the defendant treated the victim with exceptional cruelty during the commission of the offense, and (2) that the personal injuries inflicted upon the victim were particularly great. The trial court then ordered the defendant to serve the first sentence in incarceration and the second sentence on probation. After some further discussion between the parties concerning the status of the defendant's bond pending appeal, the trial court stated, "I guess, I didn't state it, but the application for diversion is denied."

The defendant filed a timely notice of appeal. We proceed to consider his claims.

## ANALYSIS

The defendant claims that the trial court abused its discretion by denying his application for judicial diversion. He also claims that his sentences are excessive. After reviewing the record and the arguments of the parties, we conclude that the defendant has failed to demonstrate any entitlement to relief. His claims are, therefore, denied.

## I. Denial of Judicial Diversion

Judicial diversion is a legislative largess that affords certain types of defendants the opportunity to avoid having a permanent criminal record if certain conditions are satisfied. *See* T.C.A. § 40-35-313(a) (2010). Therefore, we view the denial of judicial diversion as a sentencing decision under an abuse of discretion standard with a presumption of reasonableness. *See, e.g., State v. James Allen Pollard,* — S.W.3d —,— No. M2011-00332-SC-R11-CD, 2013 Tenn. LEXIS 1011, at *21 (Tenn., Dec. 20, 2013) (holding "the General Assembly has expressed an intention to have all sentencing decisions, including

consecutive sentencing, subject to the same standard of appellate review," and that "standard is abuse of discretion with a presumption of reasonableness"); *State v. Electroplating, Inc.*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998). "[T]his Court will not interfere with the refusal of the trial court to grant judicial diversion if there is any substantial evidence to support the refusal contained in the record." *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996) (internal quotation omitted).

The defendant argues that the trial court erred by denying his application for judicial diversion without considering all of the legally-requisite factors. In determining whether to grant judicial diversion, trial courts should properly consider: (a) the defendant's amenability to correction, (b) the circumstances of the offense, (c) the defendant's criminal record, (d) the defendant's social history, (e) the defendant's physical and mental health, (f) the deterrence value to the defendant and society, and (g) whether judicial diversion will serve the interests of the public as well as the accused. *See Electroplating*, 990 S.W.2d at 229. Trial courts should consider all of these factors in reaching their determination, and when they base their determination on only some of the factors, they should explain why these factors outweigh the others. *See id.*

It is clear from the record that the trial court did not expressly consider and weigh each of the necessary factors as part of a specifically-dedicated portion of its sentencing soliloquy. The portion of the sentencing soliloquy that specifically addresses the defendant's application for judicial diversion consists of only a single sentence denying the application. The question remains, however, what consequences ought to attend the trial court's failure to link specific portions of the defendant's sentencing soliloquy to the judicial diversion issue, as well as the trial court's failure to expressly discuss each and every legally-relevant diversion consideration.

In the last two years, there has been a sea of change in the legal landscape concerning appellate review of virtually every aspect of sentencing. In a trio of recent decisions, our supreme court clarified that the primary responsibility for determining appropriate sentences rests with the trial courts, and that their decisions are presumptively reasonable. *See Pollard*, 2013 Tenn. LEXIS 1011, at **19-23; *State v. Caudle*, 388 S.W.3d 273, 277 (Tenn. 2012); *State v. Bise*, 380 S.W.3d 682,707-08 (Tenn. 2012). Mistakes—even ones that in the past would have been deemed serious mistakes meriting reversal, such as the complete misapplication of an enhancement or mitigating factor—no longer serve to invalidate a defendant's in-range sentence so long as the sentence imposed does not wholly depart from the principles and purposes of the Sentencing Act. *See, e.g., Bise*, 380 S.W.3d at 706. If a reviewing court determines that a trial court made errors in its sentencing analysis, we are directed to thoroughly review the record to determine if the sentence imposed by the trial court may be affirmed nonetheless on grounds appearing therein. *See id.* at 710. But if a

-4-

reviewing court determines that the trial court has wholly failed to engage in legally-required analysis, such as engaging in any discussion of the *Wilkerson* factors prior to imposing consecutive sentences on the grounds that the defendant is a dangerous offender:

> the appellate court should neither presume that the consecutive sentences are reasonable nor defer to the trial court's exercise of its discretionary authority. Faced with this situation, the appellate court has two options: (1) conduct a de novo review to determine whether there is an adequate basis for imposing consecutive sentences; or (2) remand for the trial court to consider the requisite factors in determining whether to impose consecutive sentences.

*Pollard*, 2013 Tenn. LEXIS 1011, at *32.

In *State v. Kiara Tashawn King*, No. M2012-00236-CCA-R3-CD, 2013 Tenn. Crim. App. LEXIS 192, at *19 (Tenn. Crim. App., March 4, 2013), *perm. app. granted,* 2013 Tenn. LEXIS 690 (Tenn., Aug. 14, 2013), this court held that in light of *Bise* and *Caudle*, a trial court's decision concerning judicial diversion should—like all other in-range sentencing decisions—be accorded a presumption of reasonableness. *Cf. Caudle*, 388 S.W.3d 278 ("[W]e now explicitly hold that the abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence".). The supreme court's subsequent decision in *Pollard* that consecutive sentencing decisions, like all other sentencing decisions, are likewise accorded a presumption of reasonableness only strengthens our conclusion in this regard. *See Pollard*, 2013 Tenn. LEXIS 1011, at **19-25.

Thus, our prior caselaw, which pursuant to *Electroplating,* 990 S.W.2d at 228-29, essentially required the "automatic reversal" of any judicial diversion decision in which a trial court failed to expressly articulate and consider any one of the seven factors established in *Parker*, 932 S.W.2d at 958-59, appears to have been trumped by our duty to conduct an independent review of the record when faced with procedural deficiencies in a judge's sentencing soliloquy. Even if not, it is undesirable, both as a matter of logic and as a matter of public policy, to maintain a rule that makes it far more onerous for trial courts to engage in the simple act of denying judicial diversion than it is for them to impose the maximum available sentence upon a defendant.

In this case, however, the trial court wholly failed to explicitly discuss the *Parker*

factors during its sentencing soliloquy, and, as a result, *Pollard* suggests that this court may either: (1) remand the case to the trial court for consideration of the requisite factors, or (2) conduct a de novo review to determine if the trial court's decision may be upheld. In this case, we opt for the latter option. The trial court explicitly found and discussed the fact that two statutory enhancement factors and one mitigating factor applied to the defendant's crimes and imposed consecutive sentencing.

Where a defendant's crime has been aggravated by the presence of properly-found enhancement factors and/or consecutive sentences have been lawfully imposed, remanding the entire case to the trial court merely for further explanation of why judicial diversion is inappropriate would, in most cases, result in a needless waste of judicial resources. To frame the issue in layman's terms, if a trial court has already properly discussed and explained why a particular defendant ranks among "the worst of the worst," there is nothing to be gained by remanding the case for further extended discussion of why the same defendant does not rank among "the best of the best."

In its sentencing soliloquy, the trial court in this case expressly found that two enhancement factors served to aggravate the defendant's crimes, thus elevating their seriousness above the norm. The trial court expressly found:

> [T]hat certain enhancement factors would apply, mainly Number Five, "That the Defendant treated or allowed a victim to be treated with exceptional cruelty during the commission of the offence." And Six, "That the personal injuries that have been inflicted upon or the amount of damage to the property sustained by or from the victims was particularly great." And I'm not talking about property taken.

If these aggravating factors suffice—and as we discuss below, they do—to support the trial judge's decision to impose the maximum available sentence upon a defendant, it follows *a fortiori* that they should suffice to support a decision to deny judicial diversion.

Moreover, in this case, the particular enhancing factors found by the trial court are directly relevant to consideration of some of the *Parker* factors, including the circumstances of the offense and whether the interests of society would be served by placing the defendant on judicial diversion. After considering them, we conclude that, just as in felony sentencing, where sometimes certain "factors are sufficient, not only to elevate the sentence to the maximum ceiling, but also to firmly embed the sentence in the ceiling," *State v. Samuel D. Braden*, No. 01C01-9610-CC-00457, 1998 Tenn. Crim. App. LEXIS 213, 1998 WL 85285, at *7 (Tenn. Crim. App., Feb. 18, 1998), so too do the circumstances of the defendant's crimes in this case speak so loudly that no consideration of the remaining *Parker* factors

could alter the result.

While the defendant's failure to file the trial transcripts impedes our ability to conduct a full review of the record—as the trial transcripts (including the defendant's testimony) almost certainly contain important information relevant to several of the *Parker* factors including: (1) the circumstances of the offense; (2) the defendant's amenability to correction; and (3) whether diversion will serve the interests of the public as well as the defendant—we can glean from the pre-sentence report that the crimes at issue are not of the sort that should qualify a defendant for a lenient and preferential sentencing treatment such as judicial diversion. There was evidence presented at trial that the defendant, during summer months, locked his two young daughters in a spider-infested room that lacked air conditioning, a fan, or even an operable window. The girls were forced to urinate and defecate in their homemade prison without access to proper facilities. The defendant beat the girls with wooden spoons and forced them to work with bleach until they had chemical burns. From the information available to us, we agree with the trial court that: (1) this particular defendant was not particularly amenable to correction, and (2) the circumstances of these offenses called for some sort of meaningful punishment. We conclude that the trial court's denial of the defendant's petition for judicial diversion was consistent with all of the principles and purposes of sentencing. The defendant's claim that the trial court committed reversible error by failing to discuss all seven of the *Parker* factors by name (and in a specifically-dedicated portion of his sentencing soliloquy) is denied.

## II. Excessive Sentences

The defendant claims that the trial court erred by imposing excessive sentences. After reviewing the record, we cannot agree. Both of the defendant's sentences fall within the applicable sentencing ranges in light of his crimes. As we have discussed, a trial court's in-range sentencing decisions are entitled to a presumption of reasonableness and are reviewed under an abuse of discretion standard. *Bise*, 380 S.W.3d at 707. Consequently, we begin with the presumption that the defendant's sentence of eleven months and twenty-nine days in incarceration followed by eleven months and twenty-nine days to be served on probation is reasonable.

The defendant has presented nothing to this court that would rebut this presumption. Indeed, if there are any mitigating factors in this case beyond his lack of criminal record, they would most likely be found in the trial transcripts of the defendant's direct testimony, which he failed to file with this court. The defendant gave no testimony and made no statement in allocution at his sentencing hearing.

-7-

The defendant stands convicted of committing serious crimes against his own nine-year-old child, which, caused her physical harm as well as serious psychological trauma. A one-year sentence of incarceration does not appear to be excessive in light of these circumstances. The defendant's claim that the trial court erred by imposing an excessive sentence is denied.

## CONCLUSION

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE